UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNNY LEE LEWIS,

    Petitioner,

v.

Case No. 1:10-cv-1012
Hon. Robert J. Jonker

KENNETH MCKEE,

    Respondent.
                               /

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

**I.    Background**

This case arose from an incident which occurred on or about November 16, 2007, in the City of Kalamazoo, in which six women were robbed and held hostage in their apartment. *See* Felony Information (Appendix E) (docket no. 18). Petitioner was charged with five counts: (1) armed robbery, M.C.L. § 750.529; (2) first-degree home invasion, M.C.L. § 750.110a(2); (3) unlawful imprisonment, M.C.L. § 750.349b; (4) felony firearm, M.C.L. § 750.227b; and (5) conspiracy to commit first-degree home invasion, M.C.L. §§ 750.157a and 750.110a(2). *See* Ninth Judicial Circuit Court Register of Actions (docket no. 10); Felony Information.

On March 7, 2008, petitioner pled guilty to Counts 1, 3 and 4. *See* Plea Trans. (docket no. 13).[1] At this hearing, the prosecutor set forth a proposed plea agreement which

---

[1] In his petition, Lewis incorrectly states that he pled not guilty to these counts. *See* Petition at ¶ 5(a) (docket no. 1).

contained the following terms. In exchange for pleading guilty to Counts 1, 3 and 4, the prosecutor would dismiss the home invasion charges set forth in Counts 2 and 5. *Id.* at p. 3. As part of this agreement, the prosecutor recommended that petitioner serve 135 months (11.3 years) to 30 years. *Id.* at pp. 3-4. The prosecutor further explained that the sentence for Count 3 (unlawful imprisonment) would be served concurrently with Count 1 (armed robbery), with the two-year sentence in Count 4 (felony firearm) to be served consecutively. *Id.*[2] With the consecutive sentence, petitioner would serve a minimum sentence of approximately 13 years. *Id.*

Petitioner originally rejected the plea offer. *Id.* at p. 5. Defense counsel stated at that time that petitioner would go to trial and that counsel had recently filed an "amended notice of intent to claim defense of legal insanity." *Id.* After reviewing the court file, the trial judge concluded that the amended notice was not properly given, and that he would "exclude witnesses and proposed evidence seeking to raise a claim of legal insanity." *Id.* at pp. 5-11. Petitioner then raised his own "motion" with the trial judge asking for appointment of a new attorney. *Id.* at p. 12. After hearing from petitioner, defense counsel and the prosecutor, the trial judge denied petitioner's motion for a new attorney. *Id.* at pp. 14-15. After the denial of his motion, petitioner stated that he would "take the plea." *Id.* at p. 15.

The matter was re-called for hearing later in the day. As an initial matter, the prosecutor repeated the terms of the agreement as originally offered. *Id.* at pp. 16-17. Petitioner and his counsel acknowledged that this was the agreement. *Id.* at p. 17. The trial judge explained to petitioner that Count 1 (armed robbery) was the most serious charged offense, being punishable by

---

[2] The prosecutor mistakenly referred to the felony-firearm charge as "count five." Plea. Trans. at p. 4.

life or any term of years; Count 3 (unlawful imprisonment) carried a maximum sentence of up to 15 years; and that Count 4 (felony firearm) carried a two-years sentence which would be consecutive to the other sentences and be served before the longer sentences. *Id.* at pp. 17-18. The trial judge also noted that under a sentence agreement, the prosecutor would recommend a sentence of 135 months to 30 years. *Id.* at p. 18. Pursuant to the terms of the plea agreement, petitioner pled guilty to Counts 1, 3 and 4. *Id.* at pp. 18-19.

The trial judge advised petitioner that if the pleas were accepted, petitioner would give up the following rights: to be tried by a jury; to be presumed innocent until proven guilty; to have the prosecutor prove guilt beyond a reasonable doubt; to have witnesses appear on his behalf at trial; to question witnesses against him; to have the court order any witnesses for his defense be at the trial; to remain silent during the trial and not to have his silence used against him; and to testify at trial if he desired. *Id.* at pp. 19-20. The trial judge also advised petitioner that by entering a guilty plea, he would give up any claim that he pled guilty because of promises or threats not told to the trial judge or any claim that it was not his own free choice to enter the plea. *Id.* at p. 20. The trial judge further advised petitioner that any appeal in his case would be by leave of the Court of Appeals, meaning that he did not have a right to have an appeal, but that the appellate court "would decide if they would review the case." *Id.* at p. 21. Petitioner stated that he understood that he would give up these rights by entering a guilty plea. *Id.*

Although petitioner advised the trial judge that he wanted to plead guilty, petitioner was hesitant to proceed. However, as the following colloquy demonstrates, petitioner freely agreed to enter the plea:

| | |
|---|---|
| THE COURT: | Other than what has been said here in court, have you been promised anything if you plead guilty to these three charges? |
| MR. LEWIS: | Nope. |
| THE COURT: | Did anybody threaten you to get you to plead guilty? |
| MR. LEWIS: | No. |
| THE COURT: | Is it your own free choice to plead guilty to the charges? |
| MR. LEWIS: | No, I plead guilty because I don't know that they are going to do to my trial date. I might not have a fair trial, so I plead guilty. |
| THE COURT: | All right. |
| MR. LEWIS: | I ain't taking no chances. |
| THE COURT: | But do you understand that it is your choice whether you plead guilty or not? |
| MR. LEWIS: | I know it is my choice. |
| THE COURT: | And you are making that choice? |
| MR. LEWIS: | Yeah. |
| THE COURT: | Are you pleading guilty because you believe you are guilty? |
| MR. LEWIS: | No. |
| THE COURT: | I can only take guilty pleas from people that are guilty. |
| MR. LEWIS: | I'm guilty, I plea -- I accept the offer, I am pleading guilty. |

*Id.* at pp. 21-22.

Petitioner gave the following testimony in support of his plea. With respect to Count 1, petitioner testified that he was involved in an armed robbery at an apartment in Kalamazoo County on November 16, 2007. *Id.* at pp. 22-23. Petitioner stated that he was in a car while "other people" robbed several women. *Id.* at pp. 24-25. He was not the driver. *Id.* at p. 25. However, at some point he did go into the apartment. *Id.* Petitioner did not know the other people had weapons. *Id.* However, he later admitted that once he was inside the apartment someone else produced a weapon and made threats to the women. *Id.*

Petitioner stated that while inside the apartment, he watched some girls while other people got property from the apartment and that he held one of the girl's cell phones. *Id.* at pp. 25-27. Petitioner later stated that there were five or six females in the apartment at the time and that someone he was with threatened the females while they were taking things. *Id.* at p. 27. Petitioner did not know the names of the females in the apartment and did not have permission to take anything from them. *Id.* at pp. 27-28.

Petitioner stated that he did not have a weapon that day. *Id.* at p. 28. However, he admitted that he was with someone else and knew that this other person had a weapon. *Id.* at p. 29. Both the prosecutor and defense counsel agreed that petitioner's testimony established the elements of Counts 1, 3 and 4, and that neither were aware of "any promises, threats, or inducements related to Mr. Lewis' plea other than those on the record." *Id.*

In an apparent attempt to clarify petitioner's testimony, the trial judge posed two additional questions to petitioner:

THE COURT: Mr. Lewis, I just want to double check on this. Is the short version that you

|              | went to the apartment. While you were there, there was a robbery underway, you knew that it was underway and you had a couple of people stay where they were and that the robbery involved a gun that was being used to commit the robbery? Is that an accurate summary of basically what happened? |
|--------------|-----|
| MR. LEWIS:   | Yeah. |
| THE COURT:   | Do you still want to plead guilty? |
| MR. LEWIS:   | Yep. |

*Id.* at pp. 29-30. Based on this record, the trial judge was satisfied that petitioner's pleas were accurate, understanding and voluntary and satisfied that there was a basis to find him guilty on the three counts. *Id.* at p. 30. The trial judge accepted both the pleas and the agreement. *Id.*

Petitioner was sentenced on March 31, 2008. Sent. Trans. (docket no. 14). At sentencing, petitioner claimed that his attorney, among other things: failed to send him a police report; never went over the police report with him; kept him "in the dark"; failed to address his mental disorder including his release from a mental institution in 2006; lied to him; prevented him from proving his innocence; was incompetent; and was "prejudice[d]" against him. *Id.* at pp. 10-13. The trial judge advised petitioner that this was essentially a renewed request for substitute counsel, which he denied. *Id.* at p. 13.

The trial judge believed that a fair outcome for petitioner's crimes would be a sentence at the bottom of the sentencing guidelines. *Id.* at p. 15. On Count 1 (armed robbery), the trial judge sentenced petitioner to a prison term of 135 months to 30 years, a term of imprisonment which was consistent with the plea agreement. *Id.* After finding that petitioner was a high school

graduate in good health, the court ordered that he pay costs and restitution including court costs of $350.00, attorney fee restitution of $1,355.00, state crime victim fee of $60.00, state costs of $60.00 and victim restitution of $900.00. *Id.* at p. 16. On Count 3 (unlawful imprisonment), the judge sentenced petitioner to a prison term of 43 months to 15 years, with state costs of $60.00. *Id.* On Count 4 (felony firearm), the judge sentenced petitioner to two years in prison, which was consecutive to, but preceding (i.e., served before), the sentences for Counts 1 and 3. *Id.* Petitioner was ordered to pay the $60.00 state cost and given credit for 136 days served. *Id.*[3]

On or about April 3, 2008, the trial judge appointed petitioner appellate counsel. *See* Register of Actions. Appointed appellate counsel subsequently moved to withdraw, which the judge granted after a hearing on August 18, 2008. Motion Trans. (docket no. 15). Substitute appellate counsel moved for resentencing and/or to withdraw the plea, with the motion being heard on December 15, 2008. Motion Trans. (docket no. 16). The trial judge denied both motions. *Id.* at pp. 22-23.

Petitioner, through counsel, raised four issues on his delayed application for leave to appeal to the Michigan Court of Appeals:

I. Where the felony firearm conviction was premised on the underlying felony of home invasion and [petitioner] was not convicted of this offense, should the felony-firearm sentence run concurrently with the remaining felony sentences?

II. Is [petitioner] entitled to resentencing where the parties negotiated for the prosecutor's recommendation of a sentence falling at the bottom of the sentencing guidelines range, but the range was incorrectly scored during plea negotiations and at the time of sentencing?

---

[3] A copy of the state court's judgment of sentence dated April 1, 2008 is attached as an exhibit to petitioner's Delayed Application for leave to appeal (docket no. 17).

7

> III. Did defense counsel provide effective assistance of counsel during plea negotiations and at the time of sentencing by failing to object to and correct the sentencing guidelines?
>
> IV. Did the trial judge abuse his discretion in finding an ability to pay attorney fees of $1,355.00 where [petitioner] was an 18 year old offender with little employment history and no assets and was sentenced to 13 to 30 years imprisonment?

Delayed Application for leave to appeal (docket no. 17). The Michigan Court of Appeals denied the delayed application for lack of merit in the grounds presented. *People v. Lewis*, No. 291201 (Mich. App. April 28, 2009) (docket no. 17).

Petitioner, through counsel, raised the same four issues in his application for leave to appeal to the Michigan Supreme Court. *See* Application for leave (docket no. 18). The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Lewis*, No. 138891 (Mich. Oct. 26, 2009) (docket no. 18). Petitioner raised the same four issues in his habeas petition filed in this Court. *See* Petition.

## II. Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, she must first fairly present the substance of her claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). In the present case, petitioner has exhausted his state remedies with respect to his habeas claims.

8

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 776, 773 (2010) (internal quotation marks and citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, -- U.S.-- , 131 S. Ct. 770, 786 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* The AEDPA's deferential standard "requires Petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington*, 131 S. Ct. at 786-87. "It bears repeating that even a strong case for relief does

9

not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S. Ct. at 786. "If this standard is difficult to meet, that is because it was meant to be." *Id.*

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id*. A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

### III. Discussion

#### A. Consecutive sentencing of felony firearm conviction (Issue I)

### B. Petitioner's guideline range was incorrectly scored
### (Issue II)

Petitioner first two issues involve sentencing matters. First, petitioner contends that his two-year sentence for the felony firearm conviction should run concurrently with his other sentences because the underlying felony (first-degree home invasion) was dismissed. Second, petitioner contends that he is entitled to a re-sentencing because he negotiated a sentence falling at the bottom of the guidelines range, but that range was incorrectly scored. Neither of these issues are cognizable on federal habeas review.

Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). The United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2nd Cir. 2002) (federal courts performing habeas review do not act as "super-appellate state courts" with respect to matters of state law).

With respect to Issue I, the computation of a particular sentence as consecutive or concurrent is a matter of state law. *See People v. Gallagher*, 404 Mich. 429, 439-40, 273 N.W.2d 440 (1979) (for purposes of receiving credit for time served, "[t]he rule in Michigan is that a sentence may not be imposed to commence at the completion of another sentence in the absence of statutory authority"). Because it is a matter of substantive state law whether petitioner's sentences should run concurrently or consecutively, petitioner's claim is not cognizable in a federal habeas corpus proceeding. *See Harrison v. Parke*, No. 89-6495, 1990 WL 170428 at *2 (6th Cir. Nov. 6,

1990) ("[b]ecause it is a matter of substantive state law whether Harrison's sentences should run concurrently or consecutively, we find that the district court did not err in ruling that Harrison's challenge to his consecutive sentences was not cognizable in a federal habeas corpus proceeding") (citing *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977)); *Jones v. Smith*, No. 94-5259, 1995 WL 45631 at *1 (6th Cir. Feb. 3, 1995) (petitioner's "contention that his consecutive life sentences are unauthorized under state law does not warrant habeas relief.") (citing *Hutto v. Davis*, 454 U.S. 370, 373-74 (1982)).

Similarly, with respect to Issue II, the computation of sentencing guidelines is also a matter of state law. Federal habeas corpus relief does not lie for an error in computing a prisoner's sentence under state law. *See Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003) ("[a] state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only"); *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003) (the actual computation of a prison term involves a matter of state law that is not cognizable under § 2254); *Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Accordingly, petitioner's state law claims raised in Issues I and II should be denied.

      **C.**      **Petitioner's trial counsel was ineffective for failing to object to and correct the sentencing guidelines range during the plea negotiations and sentencing (Issue III)**

Petitioner raised the issue of ineffective assistance of counsel as part of a post-conviction motion for resentencing and/or withdraw the plea. *See* Delayed Application for leave to appeal (docket no. 17). As discussed, *supra*, this motion was denied at the hearing on December

15, 2008. *See* Motion Trans. (docket no. 16). At that hearing, the trial judge denied both the motion for resentencing and the motion to withdraw the plea. *Id.* at p. 23. The Court views petitioner's claim as a challenge to the validity of his guilty plea.

When a guilty plea is challenged on the basis of ineffective assistance of trial counsel, the court applies the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hill*, 474 U.S. at 58. Under the *Strickland* test: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. In the context of a guilty plea, the court "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Railey v. Webb*, 540 F.3d 393, 415-16 (6th Cir. 2008), quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To prevail on the prejudice requirement, a habeas petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Premo v. Moore*, -- U.S. --, 131 S.Ct. 733, 743 (2011) (internal quotation marks omitted). The reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

Where a state criminal defendant has pled guilty, the court should closely scrutinize a subsequent federal habeas claim that the guilty plea was invalid due to the alleged ineffective assistance of trial counsel. As the court observed in *Premo*:

> Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. . . .
>
> These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain

13

stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). AEDPA compounds the imperative of judicial caution.

Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture," *Richter*, --- U.S., at ----, 131 S.Ct. 770. Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Premo*, 131 S. Ct. at 741-42.

In denying petitioner's motion for resentencing and/or to withdraw plea, the trial judge rejected petitioner's claim that his trial counsel was ineffective:

The Court has reviewed the transcripts of the plea taking, as well as its own notes that are part of the court file. In this circuit, if there is a resolution by agreement in a criminal case, the judge typically completes or has completed an arraignment report. There is such a report in this file. It's dated March 7, 2008 and that's when the matter came before the Court.

In case the Court's writing isn't legible, what it says is "plea guilty count one, count three, count four, dismiss two plus five. Sentence agreement 135 months to 30 years. Count three concurrent, count four two years consecutive."

Typically there are resolutions in this county by way of a sentence recommendation. Not always. And typical, of course, means there are exceptions. But it's clear, both from my notes and a review of the transcript of the plea taking, that there was an agreement reached in this case for a particular sentence. The transcript of the plea-taking, and it's also helpful to read this in context [sic]. If you

14

review the entire thing, you can see there's a sequence of events that was occurring during the course of a day.

The transcript of Page 16 indicates, "it is a sentence agreement that the defendant is to serve 135 months to 30 years on Count one." And then the prosecutor goes on to describe the agreement. The Court, at Page 18, in the middle at one point says "on Count one, the prosecutor would recommend" and then corrects itself, "well, there is a sentence agreement that the Court would impose a sentence of 135 months to 30 years."

While there's some references to recommendations at the time of sentencing, that's read in context it's simply following through on the agreement and recognizing that the recommendation that came with the presentence report reflected that agreement and the Court complied with that agreement.

So in that context, under the case law, the Court finds first that any objection to the guidelines was waived by entering into this agreement. Even if they were not, the agreement reflects a reasonable, tentative calculation of the guidelines if that's what the parties were using for their negotiations. The outcome suggests that they probably were but there is nothing on the record that this was conditioned upon any particular scoring of the guidelines.

In any event, having reviewed the briefing, the presentence report, the transcripts in the file, the Court is satisfied that the scoring as it relates to the ultimate outcome is correct, other than OV 10, that the parties agree there isn't a basis within the record to score that variable.

The Court adopts, for purposes of its decision today, the analysis of the prosecuting attorney believing that that does reflect the basis and legal arguments that could be used to support the scoring. Counsel was not ineffective because he did, if this is what happened, work with his client and make recommendations if that occurred that is consistent with a reasonable calculation of what the guideline range would be. It's also noted at sentencing, this in effect would all recognize that the defendant may have been somewhat less culpable in an event as described within the presentence report which was just outrageous and did involve, in essence, hostage-taking, moving people, threatening them with guns, physically injuring them and the activities that led to the scoring ultimately reached in this case.

So based on that analysis, the motion is denied. That means I don't get to the point of actually considering whether the plea should be withdrawn because the Court doesn't find any basis to permit that.

*Id.* at pp. 21-23.

As the trial judge noted, petitioner waived any claims regarding the calculation of the sentencing guidelines when he accepted the plea agreement and agreed to a recommendation for a minimum sentence of 135 months plus two years for the felony firearm conviction. *See generally, People v. Blount*, 197 Mich. App. 174, 175-76, 494 N.W.2d 829 (1992) ("[w]e therefore hold that a defendant who pleads guilty and is sentenced in accordance with a plea bargain and sentencing agreement waives the right to challenge the sentence unless there is also an attempt to withdraw the plea for a sound legal reason"). Petitioner benefitted from this agreement, which dismissed the two home invasion counts and included a minimum sentence recommendation which was agreed upon by the prosecutor, defense counsel and petitioner. At the plea hearing, petitioner agreed to accept this offer rather than to take a chance at going to trial on all five counts. *See* Plea Trans. at pp. 21-22. Even if petitioner's agreement had not waived his claims regarding defense counsel's sentencing guideline calculations, and defense counsel had made some error in the calculations, petitioner has not demonstrated prejudice, i.e., demonstrated "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Premo*, 131 S. Ct. at 743, quoting *Hill*, 474 U.S. at 59. On the contrary, petitioner agreed to plead guilty to Counts 1, 3 and 4, and to accept the minimum sentence of 135 months (plus the two-year consecutive sentence for felony firearm), because he wanted to avoid a trial in which he would face all five counts. Petitioner's claim should be denied.

> **D. Trial judge abused his discretion in requiring petitioner to pay restitution (Issue IV)**

Finally, petitioner contends that the trial judge abused his discretion in requiring him to pay restitution, specifically $1,355.00 in attorney fees, because petitioner was 18 years old, had little employment history, and was sentenced to 13 to 30 years imprisonment. Claims contesting

restitution are not cognizable on federal habeas review. *See Washington v. McQuiggin*, 529 Fed. Appx. 766, 772-73 (6th Cir. 2013). In *Washington*, the state trial court ordered the petitioner (Washington) to pay his court-appointed counsel's fees. *Id.* at 772. The State argued that the federal district court did not have subject matter jurisdiction over the fees claim because the petitioner was not claiming the right to be released from custody. *Id.* The Sixth Circuit found "that the crux of the State's argument" was correct, and determined that the federal court lacked subject matter jurisdiction over this portion of the habeas petition:

> Under § 2254, subject matter jurisdiction exists "only for claims that a person 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Dickerson v. United States*, 530 U.S. 428, 439 n. 3, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (quoting *773 28 U.S.C. § 2254(a)). In general, fines or restitution orders fall outside the scope of the federal habeas statute because they do not satisfy the "in custody" requirement of a cognizable habeas claim. *See United States v. Watroba*, 56 F.3d 28 (6th Cir.1995) (holding that § 2255 does not grant subject matter jurisdiction over restitution orders); *Michaels v. Hackel*, 491 Fed.Appx. 670, 671 (6th Cir.2012) (stating that a fine is not cognizable under § 2254 and citing *Watroba*, 56 F.3d at 29); *see also Bailey v. Hill*, 599 F.3d 976, 979 (9th Cir.2010) (holding that fines and restitution orders are not cognizable under § 2254); *Washington v. Smith*, 564 F.3d 1350, 1350–51 (7th Cir.2009) (same); *Tinder v. Paula*, 725 F.2d 801, 804 (1st Cir.1984) (collecting cases); Randy Hertz & James S. Liebman, 1 *Federal Habeas Corpus Practice and Procedure* § 8.2(e) (6th ed.2012). Further, "collateral relief from a noncustodial punishment, such as a fine or restitution order, is not made readily available to a defendant just because he happens at that time to also be subject to custodial penalties." Brian R. Means, *Federal Habeas Manual* § 1:21 (2012 ed.). For habeas purposes, it is difficult to distinguish -- and Washington does not attempt to distinguish -- an order imposing attorney's fees from a fine or restitution order. Although the question of whether a claim satisfies the "in custody" requirement is to some extent one of degree, *Nelson v. Campbell*, 541 U.S. 637, 646, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004), a fee-repayment order falls outside of even "the margins of habeas," *id.*, because it is "not a serious restraint on. . . liberty as to warrant habeas relief." *Tinder*, 725 F.2d at 805; *Bailey*, 599 F.3d at 979 (quoting *Tinder* ).
>
> The district court should have dismissed that portion of Washington's petition for lack of subject matter jurisdiction. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir.2004). Because Washington brought his petition pro se, we dismiss the fees claim without prejudice. *Id.*

*Washington*, 529 Fed. Appx. at 772-73. Similarly, this Court lacks subject matter jurisdiction over petitioner's claim challenging the restitution and fees ordered by the state court's judgment. Accordingly, petitioner's Issue IV should be dismissed.

### IV. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: March 10, 2014 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).